Argued and submitted January 11, affirmed April 13, reconsideration denied June 3, petition for review denied July 6, 1983 (295 Or 297)

## STATE OF OREGON,
*Respondent,*

*v.*

## ALVIN CHAPPEL TAYLOR,
*Appellant.*

(DA 228232, DA 228233;
CA A25370 (Control), CA A25371)
(Cases Consolidated)

661 P2d 569

Lawrence Matasar, Portland, argued the cause for appellant. With him on the brief was Hoffman, Slader & Matasar, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals from convictions for carrying a concealed weapon, ORS 166.240, and for possession of a controlled substance. ORS 475.992. He claims that the trial court erred in failing to suppress evidence because of an unauthorized stop and frisk. We affirm.

At approximately 3 p.m. two undercover police officers received a tip from an informant that Lamar Smith was selling cocaine from a car. The informant said that he had seen Smith in possession of cocaine and that two other males, not identified, were in the car when the sale was made. The informant then pointed out the car to the officers, who summoned two uniformed officers, one of whom arrested Smith and searched him, finding a controlled substance. The other uniformed officer gave his attention to defendant, who was sitting in the passenger seat of the car. After defendant, at the officer's direction, left the car, the officer frisked him by patting him down.[1] The officer testified at the suppression hearing that he frisked defendant only for his own safety, looking for weapons. During the pat-down search, the officer felt a hard object, which, on removal, was revealed to be a revolver.

A stop without a warrant is authorized under the United States Constitution when an officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 US 1, 30, 88 S Ct 1868, 20 L Ed 2d 889 (1968). Oregon statutes, setting a stricter standard, authorize a stop only when an officer "reasonably suspects that a person has committed a crime." ORS 131.615(1).[2] A frisk for weapons under ORS 131.625(1)[3] is permitted only when the frisked person is already "stopped" within the meaning of ORS

---

[1] The exact sequence of the searches of Smith and defendant is unclear from the record, but no party claims that it has significance.

[2] ORS 131.605(4) provides:

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

[3] ORS 131.625(1) provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

131.615(1). *State v. Hampton,* 59 Or App 512, 651 P2d 744 (1982). Although the statutes appear to require a subjective as well as objective element, the Supreme Court has stated that "[t]he officer's motives for an otherwise justifiable stop are * * * not relevant to the question of its validity." *State v. Carter/Dawson,* 287 Or 479, 485, 600 P2d 873 (1979). Our inquiry therefore is into the circumstances existing at the time and place of the stop to determine whether, viewed objectively, they justified a belief that defendant was involved in criminal activity.[4]

■ The informant said that two other males were present in the car when he witnessed a cocaine deal being made within the preceding four hours. It was reasonable to suspect that defendant was one of those males. Even if it was not, it was clearly reasonable, in light of the fact that Smith was using the car as his place of dealing in drugs, to suspect defendant of being an accomplice of Smith's, ORS 161.155(2)(b), of frequenting a place where controlled substances are used, ORS 167.222,[5] or of possessing controlled

---

[4] In *State v. Henry,* 55 Or App 503, 507, 638 P2d 1167 (1981), *rev den* 292 Or 863 (1982), we said:

"The 'objective test' applies to the facts actually relied upon by the officer making the stop. The test is not applied to the entirety of facts that the officer could have or should have observed and chose not or failed to rely upon."

We do not take this to require a recitation by the stopping officer of the suspicious circumstances which did or did not in fact influence him in making the stop before the court may view with hindsight the totality of the surrounding events. That statement in *Henry* was only responding to a "pretext stop" situation, in which an officer actually relies on an impermissible ground for the stop, even though he knows of a clear-cut, permissible ground (usually a traffic infraction). *Henry* followed *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979), and *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), in holding that, when the officer candidly admits that he did not make the stop for a traffic infraction, the state may not use that ground, *post hoc,* to justify the stop.

[5] ORS 167.222 provides:

"(1) A person commits the offense of frequenting a place where controlled substances are used if he keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285 and 475.991 to 475.995.

"(2) Frequenting a place where controlled substances are used is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, if the conviction is for knowingly maintaining, frequenting or remaining at a place where one avordupois ounce of the dried leaves, stems, and flowers of the plant Cannabis

substances himself. ORS 475.992. Although mere presence in a car where a crime is known to have been committed may not in itself constitute *probable cause* to arrest or to search a person incident to a justifiable search of the car, *United States v. Di Re,* 332 US 581, 68 S Ct 222, 92 L Ed 210 (1948), it certainly supports a *suspicion* that the person has committed a crime, a lesser standard. Occupants of a car, unlike customers in a tavern, *see Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238 (1979), may reasonably be assumed to have some personal or business association, and knowledge that one of them is conducting criminal business in the car at least justifies a suspicion that the other occupants are participants in that business.

■    It was reasonable to suspect defendant of having committed a crime. Therefore, the stop was legal. Once he was stopped, it was reasonable to frisk defendant for arms.

Affirmed.

family Moraceae is found at the time of an arrest under this section, frequenting a place where controlled substances are used is a violation punishable by a fine of not more than $100.

"(4) As used in this section, 'frequents' means repeatedly or habitually visits, goes to or resorts to."

The state argues that the officer had not merely a reasonable suspicion that defendant had violated this statute, but probable cause to arrest for its violation. Because of our disposition of the case, we need not address this contention.