Argued and submitted May 16, reversed and remanded August 31, 1983

STATE OF OREGON,
*Respondent,*

*v.*

BRUCE FRANCIS WEBER,
*Appellant.*

(C82-05-35223; CA A26397)

668 P2d 475

Lawrence Baron, Assistant Public Defender, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

In this criminal case, defendant seeks reversal of a trial court order denying his motion to suppress evidence that the police obtained as a result of a pat-down search for weapons. We reverse and remand, because the facts apparent to the police at the time of the search were insufficient to support a reasonable suspicion that defendant was armed and dangerous.

On May 11, 1982, a number of Portland police officers[1] executed a search warrant for an apartment in northwest Portland. Officer Bolger was among the first to enter the dwelling. As he moved toward the rear of the apartment, he encountered defendant and proceeded to pat him down "for weapons." During the pat-down, Bolger felt a soft object in one of defendant's pockets. He then reached into the pocket and retrieved a baggie containing marijuana. Some time later, after defendant had been arrested, Bolger again searched his pockets and discovered two Valium tablets. Defendant moved to suppress both the marijuana and the Valium. The trial court denied the motion[2] after concluding that the marijuana discovery resulted from a lawful pat-down for weapons and that the Valium was discovered in a search incident to a valid arrest. The court then tried defendant on stipulated facts and found him guilty on two counts of possession of a controlled substance.

Defendant's primary contention is that the pat-down search was unlawful, because it was not based on a reasonable belief that defendant was armed and dangerous. We agree.

In *Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238 (1979), the Supreme Court considered the validity of a pat-down search for weapons that the police had performed on a customer of a tavern that the police were searching pursuant to a warrant. The court invalidated the search, stating:

"* * * The initial frisk of Ybarra was simply not supported by *a reasonable belief that he was armed and presently dangerous,* a belief which this Court has invariably held *must form*

---

[1] Bolger's testimony indicates that eight to ten officers participated in the search.

[2] The court did suppress certain statements that defendant made with respect to a bindle of cocaine.

*the predicate to a patdown for weapons. Adams v Williams,*
407 US 143, 146, 32 L Ed 2d 612, 92 S Ct 1921; *Terry v Ohio,*
[392 US 1], 21-24, 27, 20 L Ed 2d 889, 88 S Ct 1868 * * *." 444
US at 92-93. (Emphasis supplied.)

As the court's citations indicate, its holding resulted from the
application of *Terry v. Ohio, supra,* to the *Ybarra* facts. In
*Terry,* the court concluded that the police have a "narrowly
drawn" authority to conduct a

"* * * reasonable search for weapons for the protection of
the police officer, where he has reason to believe that he is
dealing with an armed and dangerous individual * * *." 392 US
at 27.

Such a search is justified only if

"[a] reasonably prudent man in the circumstances would
be warranted in the belief that his safety or that of others was
in danger." 392 US at 27.[3] (Citations omitted.)

Our initial inquiry, then, is whether the circumstances sur-
rounding Bolger's encounter with defendant were such that
the officer could reasonably have believed that he was armed
and dangerous.

At the hearing on the motion to suppress, Bolger tes-
tified that he found defendant in the hallway of the apartment,
that defendant was a stranger to him at that time and that he
could not remember whether defendant was walking or simply
standing in the hallway. Bolger also gave an account of defen-
dant's behavior:

"[He was behaving] not in a normal manner.

"* * * * *

"He did not gain eye contact with me when I first
approached him, which I thought was rather strange. His—
because of not gaining eye contact and appeared to be not

---

[3] Oregon has codified a portion of the *Terry* requirements in ORS 131.625(1).
That statute provides:

"A peace officer may frisk a stopped person for dangerous or deadly weapons
if the officer reasonably suspects that the person is armed and presently dangerous
to the officer or other person present."

ORS 131.605 states:

" 'Reasonably suspects' means that a peace officer holds a belief that is
reasonable under the totality of the circumstances existing at the time and place
he acts as authorized in ORS 131.605 to 131.625."

really paying attention to what was going on at the time, or even to be surprised that someone was coming through the house yelling police. * * *

"* * * * *

"So, normally in a situation like that I imagine somebody would at least look at you. I thought it odd that he did not gain any eye contact with me.

"* * * * *"

Those are the only facts[4] the state relies on to justify the pat-down, and they fall far short of the articulation of specific facts necessary to justify a suspicion that a person is armed and dangerous. *See Ybarra v. Illinois, supra,* 444 US at 93; *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977) (police officers' "reasonable suspicions" must be based on "observable facts" that can be objectively evaluated by courts reviewing the legality of police conduct). The officer's observations that defendant was "not really paying attention" and that his behavior was "not normal" and "strange" indicate, at most, that defendant was disoriented and had not yet grasped the significance of the events.

The state seeks to justify the pat-down on several other grounds. First, it attempts to distinguish the present case from *Ybarra* by pointing out factual differences between the two cases; *e.g.,* that "the building in *Ybarra* was a tavern open to the public, whereas here there was a small apartment with three occupants." We see no reason why the principles announced in *Terry* and *Ybarra* should not apply equally to pat-down searches conducted on private property and on property open to the public. *See State v. Myers,* 55 Or App 370, 637 P2d 1360 (1981). None of the factual distinctions lend support to Bolger's professed belief that the pat-down was a necessary safety precaution.

Second, the state contends that two Oregon cases, *State v. Garza,* 32 Or App 643, 574 P2d 1151, *rev den* 283 Or 1,

---

[4] In addition, the state points out that defendant was in a place with a "known history" of drug trade and that the "true source" of the narcotics was unknown. These facts are cited to support the state's assertion that Bolger "could reasonably [have] suspect[ed] defendant's involvement in the drug trade." According to the officer's own testimony, however, the search was not prompted by such a suspicion; it was a search "for weapons." A suspicion that an individual is involved in drug trade, even if it is reasonable, is not the same as a well-founded suspicion that the individual is armed and dangerous.

*cert den* 439 US 989 (1978), and *State v. Taylor,* 62 Or App 586, 661 P2d 569 (1983), support its contention that the pat-down was lawful. We do not agree. *Garza* predated *Ybarra* and involves facts significantly different from the facts presented by this case. *Taylor* deals with a question entirely different from the "armed and dangerous" inquiry we are required to make here.[5]

We hold that the circumstances surrounding Bolger's encounter with defendant were insufficient to support a reasonable belief that defendant was armed and dangerous. The pat-down for weapons was therefore unlawful, and the marijuana discovered as a result of that pat-down should have been suppressed.[6] It follows that the defendant's arrest, which was based on the marijuana discovery, was not a legal arrest. The second search of defendant's pockets, which yielded two Valium tablets, therefore cannot be justified as a search incident to arrest.

Reversed and remanded for a new trial.

[5] In *State v. Taylor, supra,* the question was whether the circumstances at the time of the search justified a belief that the defendant was "involved in criminal activity." The further question in this case—did the officer have a reasonable concern for his safety?—was not at issue in that case.

[6] Our resolution of the pat-down issue makes it unnecessary for us to decide whether the officer lawfully reached into defendant's pocket to ascertain the nature of the "soft bulge" that he felt during the pat-down.